UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

BRIAN CLARK                                         CASE NO. 19-cv-727

-vs-                                                JUDGE DRELL

DRIVEN BRANDS SHARED SERVICES     MAGISTRATE JUDGE PEREZ-MONTES
L L C ET AL

## RULING AND ORDER

Before the Court are two competing motions for summary judgment filed by Driven Brands Shared Services, LLC and Take 5, LLC (Doc. 67) and by Commercial Solutions, Inc. and Admiral Insurance Company (Doc. 105). For the reasons expressed below, Driven Brands' and Take 5's motion for summary judgment (Doc. 67) will be DENIED and Commercial Solutions, Inc.'s and Admiral Insurance Company's motion for summary judgment (Doc. 105) will be GRANTED, dismissing all pending claims for tort contribution, contractual indemnification and insurance coverage filed against Commercial Solutions and Admiral Insurance with prejudice.

I.   BACKGROUND

This dispute arises from a personal injury claim by plaintiff Brian Clark ("Clark"), a citizen of Louisiana. (Doc. 1-2). On August 22, 2018, Brian Clark was performing maintenance work on a garage-style door at a Take 5 Oil Change located

in Alexandria, Louisiana (hereinafter "store") when a plexiglass panel fell out of the door and struck him in the head. Id.

The store was owned and operated by Driven Brands Shared Services, LLC and Take 5, LLC, each wholly owned by Driven Brands, Inc., which is a Delaware corporation with its principal place of business in North Carolina. (Docs. 1, 7, 20). At the time of the accident, Driven Brands Shared Services, LLC contracted with Facilitysource, LLC to provide maintenance, repair, and facility management services at various Take 5 Oil Change locations throughout the United States, including the store involved in this suit. Facilitysource, LLC is a Delaware limited liability company with its principal place of business in Ohio. (Docs. 47, 67-6). Facilitysource in turn subcontracted with Commercial Solutions to provide maintenance and repair services for Facilitysource's customer Driven Brands. Commercial Solutions, Inc. is a Rhode Island corporation with its principal place of business also in Rhode Island. (Doc. 41).

The service provider agreement between Facilitysource and Commercial Solutions includes, in pertinent part, the following indemnification clauses:

> (a) To the fullest extent allowed by law, [Commercial Solutions] shall defend …, indemnify, and hold harmless [Facilitysource] [and] [Facilitysource]'s Customer(s)… (collectively, the "Indemnified Parties") from and against any and all liabilities, damages, judgments…arising directly or indirectly from or out of (i) any act or omission of [Commercial Solutions]… or any subcontractor; (ii) any failure of [Commercial Solutions] or [Commercial Solutions]'s subcontractor, if any, to perform the services hereunder in accordance with generally accepted industry and professional standards; (iii) any breach of [Commercial Solutions]'s representations as set forth in this Agreement; or (iv) any other failure of [Commercial Solutions] or [Commercial Solutions]'s

>    subcontractor, if any, to comply with the obligations on [Commercial Solutions]'s part to be performed hereunder.
>
>    ...
>
>    (d) The Indemnified Parties' right to indemnification under this Section shall not be impaired or diminished by any act, omission, conduct, misconduct, negligence, or default (other than gross negligence or willful misconduct) of an Indemnified Part or any employee of any Indemnified Party who contributed or may be alleged to have contributed thereto in whole or in part.

The store where Brian Clark sustained his injury is considered a customer of Faciltysource. Further, the contract includes a choice of law and forum selection clause providing for the laws of and a forum in Arizona.

Commercial Solutions, Inc. in turn subcontracted with R-T-Go Holdings, LLC, d/b/a Best Little Door House, a Louisiana limited liability company employing plaintiff Clark to perform maintenance work on a garage-style door at the store.

Approximately one month prior to the accident, a glass panel in the garage door Clark would later service cracked. (Deposition of Doreyon Jeff, pp. 26-31). Doreyon Jeff, the manager of the store was directed by his supervisor to replace the glass panel with a plexiglass panel. Id. Doreyon Jeff went to Lowes and helped the technicians cut a plexiglass panel. Id. For unexplained reasons, the plexiglass panel was cut slightly wider than needed. Id. Had the plexiglass panel been sized properly, four retainers would have been needed to hold the panel properly in place. However, resulting from the slightly wider cut, fewer than all retainers[1] were used to hold the panel in place. Id.

---

[1] While irrelevant to this motion, there appears to be a dispute of fact regarding the number of retainers used to hold the plexiglass panel in place. Compare Deposition of Brian Clark pp. 46-49 with Deposition of Doreyon Jeff p. 29.

3

Between the dates of installation of the plexiglass panel and the subject accident, Clark had serviced the garage door to fix a faulty lift system. (Deposition of Brian Clark, pp. 30-31). This service call was successfully completed without incident. On the date of the accident, Clark and his apprentice arrived at the store to service the garage door a second time for similar reasons relating to the faulty lift system. (Deposition of Doreyon Jeff, pp. 46-47). When service was nearly complete, Clark opened the garage door, and the panel fell from the door striking Clark on his head.[2] (Deposition of Brian Clark, pp. 42-43). Clark was not made aware of the replaced plexiglass panel and the missing retainer until after the accident.[3]

Driven Brands and Take 5 filed a motion for summary judgment relying on the cited indemnity provisions of the contract and Clark's alleged negligence during the service. (Doc. 67). They argue that the contractual indemnity provision indemnifies Driven Brands and Take 5 regardless of any fault contributable to the employees of the Take 5 Oil Change store where the accident happened. Commercial Solutions, Inc. and its insurer Admiral Insurance Company filed a competing motion for summary judgment relying on the Louisiana Anti-Indemnification Act, La. R.S. art. 9:2780.1 ("LaAIA"). (Doc. 105). They argue that the LaAIA voids the indemnification provision to the extent that it may be used to indemnify Driven Brands and Take 5

---

[2] While irrelevant to this motion, there appears to be several disputes of fact regarding where the apprentice was standing and what he was doing when the plexiglass panel fell. Compare Deposition of Clark p. 44 with Deposition of Doreyon Jeff pp. 45, 47-51, 56.

[3] While also irrelevant to this motion, it is unknown in this record whether Clark could have seen or noticed the retainers, or lack thereof, before the panel fell.

from any alleged negligence contributable to the employees of the Take 5 Oil Change store where the accident happened for failing to disclose that one or more retainer was not installed when replacing the panel. Driven Brands and Take 5 respond that the garage door maintenance contract is not a "construction contract" as defined in section A(2)(a) of the LaAIA, and, therefore, the LaAIA does not apply.

## II.  SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider "all evidence in the light most favorable to the party resisting the motion." Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 680 (5th Cir. 2011) (internal citations omitted). It is important to note that the standard for summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law.

The movant has the burden of pointing to evidence proving there is no genuine dispute as to any material fact, or the absence of evidence supporting the nonmoving party's case. The burden shifts to the nonmoving party to come forward with evidence which demonstrates the essential elements of his claim. Liberty Lobby, 477 U.S. at 250. The nonmoving party must establish the existence of a genuine dispute of material fact for trial by showing the evidence, when viewed in the light most

favorable to him, is sufficient to enable a reasonable jury to render a verdict in his favor. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Duffy v. Leading Edge Products, Inc., 44 F.3d 308, 312 (5th Cir. 1995). A party whose claims are challenged by a motion for summary judgment may not rest on the allegations of the complaint and must articulate specific factual allegations which meet his burden of proof. Id. "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." Duffy, 44 F.2d at 312, citing Liberty Lobby, 477 U.S. at 247.

### III. CHOICE OF LAW

#### a. LAW

"It is well established that where the parties stipulate the state law governing the contract, Louisiana conflict of laws principles require that the stipulation be given effect, unless there is statutory or jurisprudential law to the contrary or strong public policy considerations justifying the refusal to honor the contract as written" O'Bannon v. Moriah Technologies, Inc., 196 So.3d 127, 141 n.8 (La. App. 1 Cir. 2018). Further, a choice-of-law analysis is required pursuant to Book IV of the Louisiana Civil Code prior to the application of Louisiana statutes that operate to circumvent a weighing of the various interests involved.[4] Champagne v. Ward, 893 So.2d 773, 785-87 (La. 2005); Carter v. Youngsville Housing LLP, 2018 WL 3637884, *2 (citing Champagne and compiling cases relying on Champagne).

---

[4] La. R.S. 9:2780.1(D)

"A federal court sitting in diversity jurisdiction applies the forum state's choice-of-law rules to determine which substantive law will apply." Weber v. PACT XPP Tech., AG, 811 F.3d 758, 770 (5th Cir. 2016) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941)). Louisiana choice-of-law rules are found in the Louisiana Civil Code, Book IV: Conflict of Laws. Applicable to this suit is Art. 3515, the general and residual rule, and Art. 3537, the general rule with respect to conventional obligations. "These two Articles and the comments accompanying them are intended to be read together." La. Civ. Code art. 3537, comment (c).

b. ANALYSIS

The LaAIA and the Arizona equivalent A.R.S. § 32-1159 ("ArAIA") contain substantially similar language and express the same policy, i.e. that in construction contracts the indemnitee may not be indemnified from liability arising from its own negligence. The only minor nuance in policy between the LaAIA and ArAIA is that under the ArAIA the indemnitee may not be indemnified from liability arising from its "sole" negligence. This suggests that ArAIA does not render void a contract clause indemnifying the indemnitee from liability arising from negligence of the indemnitee and another. This is contrary to a pure comparative negligence doctrine which Louisiana has adopted. Thus, this minor nuance has significant consequences.

This dispute arises from personal injury to Clark, a Louisiana citizen, in the course of repair or maintenance work at a Take 5 Oil Change store located in Louisiana. To summarize, the store was and is owned and operated by Driven Brands and Take 5, which are each wholly owned by Driven Brands, Inc., a Delaware

7

corporation with its principal place of business in North Carolina. Driven Brands contracted with Facilitysource, LLC, a Delaware limited liability company with its principal place of business in Ohio, to provide maintenance, repair and facility management services to Take 5 Oil Change locations nationally. Facilitysource in turn contracted with Commercial Solutions, LLC of Rhode Island to provide maintenance and repair, and Commercial Solutions in turn subcontracted R-T-Go Holdings, LLC, d/b/a Best Little Door House, a Louisiana limited liability company employing plaintiff Clark. The record does not establish any actual relation between the state of Arizona and the parties, the contract, or the dispute.

Failing to apply the LaAIA would impair Louisiana policy to a greater extent than any impairment on Arizona policy for failing to apply the ArAIA because (1) the facts in dispute raise a genuine issue of comparative fault, and (2) Arizona appears to have no connection with the parties, the contract, or the dispute which might minimize the weight of Louisiana's public policy favoring the freedom to contract.

Considering the above analysis, we find that Louisiana's substantive law applies. Moreover, because both parties applied Louisiana law in their motions and briefs and neither party made any argument concerning the application of Arizona law, the Court is of the opinion that the parties have waived the choice-of-law provision. See Fruge v. Amerisure Mut. Ins. Co., 663 F.3d 743, 747 (5th Cir. 2011); Morel v. U.S. Xpress, Inc., 2020 U.S. Dist. LEXIS 233101, *11 n.54 (E.D. La. 2020); Clayton Williams Energy, Inc. v. Nat'l Union Fire Ins. Co. of Louisiana, No. CIV.A. 03-2980, 2004 WL 2452780, at *10 (E.D. La. Nov. 1, 2004), aff'd sub nom. Clayton

Williams Energy, Inc. v. Nat'l Union Fire Ins. Co. of La., 161 F. App'x 378 (5th Cir. 2006).

IV.  SCOPE OF LaAIA, LA. R.S. ART. 9:2780.1

Driven Brands and Take 5 contend that the LaAIA is not applicable to the service performed by Clark because it is not a "permanent improvement to real property."[5] We disagree.

Courts interpreting Louisiana statutes "have a duty ... to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same subject matter." City of New Orleans v. Louisiana Assessors' Ret. & Relief Fund, 986 So. 2d 1, 15 (La. 2007)

La. Civ. Code art. 2756 is understood to describe a construction contract. See ETI, Inc. v. Buck Steel, Inc., 211 So. 3d 439, 445 (La. App. 4 Cir. 2017), writ denied, 218 So. 3d 626 (La. 2017). Louisiana courts apply the "value" test to distinguish between construction contracts and sales contracts. Alonzo v. Chifici, 526 So. 2d 237,

---

[5] 360 International, Inc. v. GoMex Offshore, Ltd., 2019 WL 2852947, *3-4 (W.D. La. 2019). GoMex is distinguishable as it pertains to a motion to transfer venue and the court found that the definition of "construction contract" was not dispositive of that issue. Id. at *4. In GoMex, the plaintiff-nonmoving party argued that a forum selection clause in a "construction contract" is contrary to the public policy of La. R.S. art. 9:2779 and, therefore, unreasonable. Id. at *3. Because La. R.S. art. 9:2779 does not define "construction contract," the court relied on La. R.S. art 9:2780.1(A)(2)(a) to determine whether La. R.S. art. 9:2779 applied. Id. at *3-4. However, the GoMex court found that, regardless of its interpretation of "construction contract," enforcement of the forum selection clause was not unreasonable because "the public policy favoring freedom to contract... must prevail over the public policy articulated in Article 2779." Id. at *4. Accordingly, the GoMex definition of "construction contract" requiring "permanent improvement to real property" is *dicta*. Id. at *3-4.

241 (La. Ct. App. 1988), writ denied, 527 So. 2d 307 (La. 1988). "If the principal value of the contract is the materials, then it is a contract of sale, [sic] however, if the principal value is the labor and skill, then it is a contract to build." First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc., 178 F. Supp.3d 390, 403 (E.D. La. 2016).

In the case at bar, Clark and his apprentice's labor and skill were provided to repair, service, and maintain the garage door. The record does not suggest that Clark provided a valuable sum of materials to execute that repair, service, and maintenance. As a result, the contract to repair, service, and maintain the garage door is a "construction contract" under Louisiana law generally and the LaAIA specifically. Accord Town of Jonesboro v. Pittsburg Tank & Tower Maintenance Co., Inc. 2018 WL 3199476, *2 (W.D. La. 2018) (holding that cleaning, painting, and installing items not in ready to use form on a water tank is a construction contract under La. R.S. art. 9:2779) (compiling cases finding as construction contracts the following: the renovation of a restaurant, the installation of a swimming pool, the installation of a custom fireplace, the removal and re-installation of a large air-conditioning unit, the building a customized piece of jewelry, and the installation of carpeting and flooring in health club facilities).

Driven Brands and Take 5's construction of paragraph A(2)(a) of the LaAIA isolates a single phrase from the statute. A "phrase cannot ... be read in isolation. A statute cannot be interpreted by review of select portions of the statutory scheme. All the words must be read together." Louisiana Assessors' Ret. & Relief Fund, 986 So. 2d at 18.

Paragraph A(2)(a) defines a "construction contract" and includes, in pertinent part, two distinct prepositional phrases. The first includes "design, construction, alteration, renovation, repair, [and] maintenance" and the second includes "building, structure, highway, road, bridge, water line, sewer line, oil line, gas line, appurtenance, [and] other improvement to real property." Under the statutory interpretation canon *ejusdem generis*, the catch all phrase "other improvement to real property" modifies those items in the list in which the catch all phrase belongs. In other words, the repair or maintenance of a building, structure or improvement to real property is a construction contract as defined in the LaAIA.

Clark's labor and skill provided to repair, service and maintain the garage style door falls within the capacious definition of "construction contract" provided in the LaAIA. See <u>Atlantic Specialty Insurance Co. v. Phillips 66 Co.</u> 790 Fed.Appx. 598, 600 (5th Cir. 2019) (LaAIA "defines construction contracts capaciously to include any agreement for the ... maintenance of a ... structure ... gas line, appurtenance or other improvement to real property.") (citation omitted); <u>Salathe v. Parish of Jefferson Through Department of Sewerage</u>, 300 So.3d 460, 469 (La. App. 5 Cir. 2020) (finding repair or maintenance of a sewer line to come within the scope of a "construction contract" as defined in the LaAIA).

V. CONCLUSION

For the reasons enumerated above, it is hereby

ORDERED that Driven Brands Shared Services, LLC's and Take 5, LLC's motion for summary judgment (Doc. 67) is DENIED, and further Commercial

Solutions, Inc.'s and Admiral Insurance Company's motion for summary judgment (Doc. 105) is **GRANTED**. All claims for tort contribution, contractual indemnification, and insurance coverage filed against Commercial Solutions, Inc. and Admiral Insurance Company by Brian Clark, Sharon Clark, Driven Brands Shared Services, LLC, Take 5, LLC, Facilitysources, LLC, and Louisiana Home Builders' Association Self-Insurers' Fund are **DISMISSED with prejudice**, on grounds that any language of the Service Provider Agreement between Facilitysources and Commercial Solutions is contrary to Louisiana R.S. 9:2780.1, the anti-indemnity law in construction contracts.

THUS DONE AND SIGNED this 23RD day of February, 2021.

DEE D. DRELL, JUDGE
UNITED STATES DISTRICT COURT